Donna Jean McCUEN, Appellant,

v.

Harlan A. HARTSOCK, Executor of the Estate of Amos S. Hartsock and Harlan A. Hartsock, Individually, Appellees-Cross-Appellants.

No. 52950.

Supreme Court of Iowa.

June 11, 1968.

Mack, Mack & Hansen, Storm Lake, for appellant.

Donald G. Beneke, Laurens, for appellees-cross-appellants.

SNELL, Justice.

This is an action in equity brought in two counts by plaintiff appellant as a beneficiary of a joint, mutual and contractual will executed by Sadie and Amos S. Hartsock, her parents. Count I alleges that certain inter vivos transfers were made in violation of the provisions of the will. Count II asks that the money transferred be subject to a constructive trust in favor of the plaintiff. The trial court found insufficient evidence to declare a constructive trust, but found the transfers unreasonable and ordered $10,000 (½) of the money returned to the estate of the deceased and be divided under the terms of the will. As noted, infra, this would give plaintiff one-fourth of the amount involved. From the premise of fairness this might appeal to us as a Solomon-like treatment but it does not authorize us to substitute our opinion for what her father actually did with his own money.

Amos and Sadie Hartsock were husband and wife, they owned land and farmed in Pocahontas County. Amos owned 134 acres and Sadie owned 120 acres. They had two children, Donna and Harlan, who are the plaintiff and the defendant in this action. At the time of Amos' death, Harlan was 52 and Donna was 37.

After finishing high school, Harlan stayed with his parents on the farm until he was 26. He left for six or seven years and then returned to assist his parents on the farm in 1943 or 1944. Harlan and Amos farmed together until Amos retired in 1957 when Harlan bought Amos' machinery and continued to farm 134 acres of the land as a tenant. The evidence does not show the net worth of Amos and Sadie at that time but it does indicate that Harlan's efforts were helpful.

Donna graduated in 1946, attended college for two years, was married and since then has lived away from the Laurens community. At the time of Amos' death Donna was living in Des Moines.

Amos and Sadie accumulated savings. Eventually they established joint tenancy savings accounts. These accounts totaled $35,000 at the time of Sadie's death. Just when Amos and Sadie first had savings accounts does not appear.

On the sixth of July, 1957 Amos and Sadie executed a joint, mutual and contractual will providing that when either of them should die the other would have a life interest in all the *realty* in which either of them had an interest. On the death of the survivor the 134 acre farm was to go to Harlan as his absolute property, and the 120 acre farm was to go to Donna as her absolute property. As between Amos and Sadie the survivor was to hold all *personalty* as his or her absolute property. Each provided that if the other did not survive the personalty was to be devised and bequeathed to Harlan and Donna share and share alike.

The present controversy is over money traced back to joint savings accounts established subsequent to the date of the will.

Sadie Hartsock died on August 15, 1964 survived by her husband. Sadie was ill and in hospitals much of the time during the last two years of her life.

On Sadie's death, Amos took control of all the joint tenancy bank accounts. He received all the dividends paid on these accounts and made some withdrawals. The joint savings accounts passed to Amos as surviving joint tenant.

On February 19 and 24, 1965 Amos transferred most of the savings accounts to new joint tenancy accounts naming himself and Harlan A. Hartsock as joint tenants with rights of survivorship. There is no claim that these transfers were for a present consideration. There was testimony that before these accounts were opened, Harlan

talked to Donna about the matter suggesting that money should be placed in joint tenancy to save on the inheritance tax and to keep the estate low, (a rather fallacious idea.) Donna testified that she was unable to know what to think about that idea at the time. Donna said she had no definite knowledge the money was transferred to new accounts.

While both Sadie and Amos were living they made gifts to Donna and Harlan nearly equal in amount.

During February 1965 Amos and Harlan purchased a new 1965 Oldsmobile owned jointly by them.

In February or March, 1965 Amos went on a trip to Texas and Mexico. While on this trip he became ill. He returned to Iowa. He underwent medical examination and was hospitalized in Des Moines for about three weeks commencing April 6, 1965. He had lung cancer from which he died August 27, 1965 at the age of 73. After his release from the hospital, Amos lived in Harlan's home until his death. He died in Harlan's home. For most of the time prior to his death Amos was able to get around and to drive his car. He was bedfast during the last few days before he died.

At one time when both Sadie and Amos were still alive their joint savings accounts totaled $35,000. Withdrawals by Amos of $15,000 are not questioned. There remained $20,000. This money was in three accounts when Amos died.

There was on deposit with Spencer Savings and Loan Association $5,000, with Northwest Federal Savings and Loan Association $5,000, and with First Federal Savings and Loan Association of Storm Lake $10,000.

Except for the name of the depository, the account number, and the date, these accounts were pursuant to signed signature cards reading as follows:

"Account No.____11254____

"A.   Amos S. Hartsock or
and B.   Harlan A. Hartsock
and C._____
Type All Names:   (Last Name)      (First Name)      (Middle Name)

as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for a savings account in

SPENCER SAVINGS AND LOAN ASSOCIATION

and for the issuance of evidence thereof in their joint names described as aforesaid. You are directed to act pursuant to any one or more of the joint tenants' signatures, shown below, in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one or the survivor or survivors at any time. This account may be pledged in whole or in part as security for any loan made by you to one or more of the undersigned. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationship reflected in or established by this contract. It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties are and shall be conclusively intended to be a gift and delivery at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account. You are authorized to accept checks and other instruments for

credit to this account, whether payable to one or more of the parties, and to supply any needed endorsement. You are relieved of any liability in connection with collection of all items handled by you without negligence, and shall not be liable for acts of your agents, subagents or others or for any casualty. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to this account, including expense incurred, and any other outside expense incurred relative to this account may be charged to it.

| A /s/ Amos S. Hartsock | | Laurens, Ia. | | Feb. 19, '65 |
|---|---|---|---|---|
| Signature | (Type) | Street | City & State | Phone |

| B /s/ Harlan A. Hartsock | | Laurens, Ia. | | Feb. 19, '65 |
|---|---|---|---|---|
| Signature | (Type) | Street | City & State | Phone |

| C | | | | DATE |
|---|---|---|---|---|
| Signature | (Type) | Street | City & State | |

Note: The correct way to establish a common law joint tenancy or its equivalent in any state is to use 'and' in joining tenants' names on all evidence of the account. All tenants should sign this card. Rule out unused signature line."

———◆———

There is no evidence that from the dates these accounts were established in the names of Amos and Harlan, and until the death of Amos, anyone other than Amos made withdrawals therefrom.

Following Amos' death Harlan claimed and took control of these accounts.

Donna, understandably unhappy, claims a breach of the terms of the joint, mutual and contractual will when the money in the joint savings account was not shared equally with her. She asks for an accounting and asks that the $20,000 be returned to the estate of Amos S. Hartsock or to settle with or account to her for said funds. In the second count she asks that the funds be declared subject to a constructive trust as the apparent reason given for the joint account was to reduce the probate estate and inheritance taxes, and not to provide larger gifts for Harlan than Donna.

The trial court held there was not sufficient evidence to support the establishment of a constructive trust. We agree.

The trial court then concluded that it was unreasonable for Harlan to claim all of the $20,000 because it has the effect of defeating the purpose of the contract expressed in the joint will. The ultimate issue is who is entitled to the $20,000 remaining in the savings and loan accounts at the death of Amos?

The will by specific provision was joint, mutual and contractual. It further provided: "After the death of the first of us the provisions herein made cannot be changed by the survivor."

Item V of the will provided:

"I, Amos S. Hartsock, do hereby give, devise and bequeath all personal property of which *I may die seized or possessed* and wherever situated to Sadie B. Hartsock, the same to be her absolute property, but if she does not survive me then I give, devise and bequeath said property to my children Harlan A. Hartsock and Donna Jean McCuen to share and share alike." (Emphasis added)

Plaintiff claims that as Sadie did not survive Amos was obligated to give his personal property to Harlan and Donna, share and share alike.

The trial court relied greatly upon the case of In Re Estate of Lenders, 247 Iowa 1205, 78 N.W.2d 536. The court in applying the holding in Lenders to the facts here concluded that Amos Hartsock could make the disposition to Harlan by way of joint tenancy accounts, only if the amount was reasonable and did not have the effect of defeating the purposes of the contract as expressed in the joint will.

The court said that the survivor may not make lifetime dispositions which are unreasonable, and found a disposition of $20,000 in this manner to be unreasonable. The court then determined that a disposition of $10,000 to Harlan through joint tenancy accounts would have been reasonable. Therefore, it was ordered that Harlan account to and pay over to the Estate of Amos S. Hartsock the sum of $10,000 with interest.

The $10,000 as an asset of the estate would be divided one-half to Harlan and one-half to Donna. The end result of this would leave Harlan with $15,000 and Donna with $5,000. Neither was satisfied. Donna appealed and Harlan cross-appealed.

I. As shown, supra, these accounts were established by written instruments signed by Amos S. Hartsock and Harlan A. Hartsock. We have no question of ambiguity or construction. The instruments by their specific provisions created joint tenancies with right of survivorship. The depository associations were authorized to pay to either Amos or Harlan. When Amos died Harlan, as survivor, was the only one to whom the associations were authorized to pay.

Whether Amos acted as a matter of convenience, to pay Harlan for years of help, or make a gift we do not know. He did by written instrument create survivorship rights in Harlan. He knew what he was doing. He was at least reasonably familiar with the operation of joint tenancy accounts, having succeeded to the accounts as sole owner upon the death of Sadie. He knew from experience that the survivor could take over and use the accounts as his own. There is a suggestion from Donna's testimony that Harlan's purpose in suggesting joint accounts was to reduce the estate and save inheritance taxes. The problems of costs, expenses and taxes are not before us but the joint tenancies certainly reduced the estate as far as Donna is concerned. We are not suggesting that joint tenancies may not serve a useful purpose but this case is illustrative of the disputes that do arise and the defeat of intent that may arise therefrom.

Here the written instruments created alternate rights of ownership and the right of survivorship. Contract rights were created with the depositories. Section 528.64, Code of Iowa, provides:

"Deposit in names of two persons. When a deposit shall hereafter be made in any bank or trust company in the names of two persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or interest or dividend thereon, may be paid to either of said persons whether the other be living or not, and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank, banker, or trust company for any payment so made."

This statute appears in the chapter on Banks and Trust Companies and is basically a statute for business convenience and payors' protection. It does, however, create in a survivor a right to take and use and a presumption of ownership. A statute in Michigan is somewhat stronger in that it makes such a deposit prima facie evidence of intent to vest title in the survivor. The effect, however, is the same.

In Wechsler v. Zen, 2 Mich.App. 438, 140 N.W.2d 581, the court of appeals said:

"Clear and persuasive proof is needed to rebut the statutory presumption that deposits of the character here involved become the property of the survivor of the joint depositors." (loc. cit. 583 of 140 N.W.2d)

Problems of joint tenancy accounts have been before us many times. We recently reviewed the problem, the approach thereto and the premise from which it should be resolved. See In Re Estate of Martin, Iowa, 155 N.W.2d 401.

In that case we held the gift theory was not controlling. We quoted with approval from 10 Am.Jur.2d, as follows:

"Generally, where a bank account of two depositors is expressly made payable to either or to the survivor, the right of survivorship exists. * * * In creating a joint bank account with right of survivorship, * * * the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required; courts are controlled by the substance of the transaction rather than by the name given it. This rule has been held to apply to the creation of a joint and survivorship account in savings and loan or building and loan share accounts." (loc. cit. 405–406 of 155 N.W.2d)

We upheld the contract approach and the right of the surviving joint tenant to ownership of a certificate of deposit.

The authorities were extensively reviewed in that case and need not be repeated here.

■ In the case before us it is clear that Harlan is the owner of the deposits in question. He had, as said in the Martin case, "an alternate right of ownership in the deposit," in Amos' lifetime, and when Amos died an exclusive ownership.

There is nothing in the record to indicate that Amos ever attempted to restrict Harlan's use of the money or that Harlan ever agreed to divide with Donna.

■ II. A more difficult problem is whether Amos violated the provisions of his contractual will be disposing of personal property in other than equal shares.

We think the answer to the basic problem is found in In Re Estate of Lenders, 247 Iowa 1205, 78 N.W.2d 536. In the case before us both sides cite, rely on, distinguish and discuss the Lenders holding. The trial court held that under that case the court might make a reasonable division of the property. We do not think Lenders goes that far.

In Lenders the question was whether gifts by testatrix in her lifetime (in part by creating joint accounts) were in violation of mutual wills and an oral agreement with her husband who predeceased her. Upon her husband's death Mrs. Lenders accepted the provisions in his will in her favor. When Mrs. Lenders died her estate was appraised at about $540,000, consisting of gifts from her husband in his lifetime, accumulations therefrom and the bequest under his will.

In four different transactions after her husband's death Mrs. Lenders gave three sisters money and property valued at about $88,000.

By mutual wills Mr. and Mrs. Lenders gave to the other, if surviving, all property to be his or hers "absolutely." If the other did not survive each will gave all the property to 13 named beneficiaries, including the three sisters to whom Mrs. Lenders made inter vivos gifts. The gifts amounted to about 14 per cent of what Mrs. Lenders had. In any event, the three sisters under the will would have taken about 40 per cent of the amount given them by inter vivos transfer. Their total benefits were increased.

The will provisions in Lenders and the case before us are comparable. In each case the property was given to the survivor "absolutely." In each case there are provisions for disposition if the spouse did not survive. Here as in Lenders the gifts were made by the one who left no surviving spouse.

In the case before us Amos spent $15,000 of the amounts on hand when Sadie died.

His right to do so has not been questioned. He did not spend but he did effectively dispose of the money involved herein. In Lenders we said: "We hold a joint interest in these accounts vested in Katherine and Ellen, respectively, when the joint accounts were created and the gifts were not testamentary in character." Citing authorities. Loc. cit. 1219 of 247 Iowa, loc. cit. 544, 78 N.W.2d .

In the case before us as in Lenders Harlan's interest vested when the accounts were created. Amos' disposition was not testamentary in character.

In Lenders we quoted from 94 C.J.S. Wills § 119, as follows:

"Where the contract covers only what property the promisor may leave at his death * * *, the promisor remains free to use, control, and dispose of property in his lifetime, and transfers or conveyances by him before his death are valid unless made with intent to defraud, even though no consideration therefor is given. Such contracts do not prevent the making of gifts by the promisor in his lifetime provided the gifts, are reasonable, absolute, bona fide, not testamentary in effect, and not made for the purpose of defeating the contract or having such effect." (loc. cit. 1214–1215 of 247 Iowa, loc. cit. 542 of 78 N.W.2d.

We also quoted 57 Am.Jur., Wills, § 710, as follows:

"It may be stated generally that the courts do not consider that the parties to a joint and mutual will intended to restrict either party from disposing of property in good faith by transfers effective during his or her lifetime, unless a plain intention to this effect is expressed in the will or in the contract pursuant to which it was executed. Nothing short of plain and express words to that effect in a contract to execute wills with mutual and reciprocal provisions is sufficient to prevent one of the testators from disposing of his property in good faith during his lifetime, notwithstanding

the death of the other testator. *In general, no such restriction exists where, under the contract and will executed pursuant thereto, each testator designates the property to be devised as that belonging to him at the time of his death."* (loc. cit. 1215 of 247 Iowa, loc. cit. 542 of 78 N.W.2d) (Emphasis added)

In Hatcher v. Sawyer, 243 Iowa 858, 868, 52 N.W.2d 490, 495, this appears:

"Where the contract covers only what property the promisor may leave at his death the promisor is not restricted in the use, control and disposition of his property during his lifetime and transfers or conveyances before his death are valid where there is no intent to defraud. 68 C.J. [Wills], page 586, section 204. Gifts which are reasonable, not testamentary in effect, and which are not made to circumvent the contract or have that effect may be made. 68 C.J. [Wills], section 204, page 587."

As noted, supra, in Lenders the inter vivos gifts amounted to about 14 per cent of the donor's assets and in any event the donees under the will would have received about 40 per cent of what was given them. It is difficult to make comparable comparisons here.

Under the parents' joint will Harlan would have received 50 per cent of the $20,-000 in any event. Amos and Sadie owned real estate. The value does not appear but at current market prices the land would represent a substantial part of the total assets. The personal property in Amos' estate, exclusive of the joint accounts here involved, included bank accounts, rentals and miscellaneous items and was appraised for state inheritance purposes at $11,453.94. We cannot determine percentages, but the creation of joint tenancy accounts gave Harlan $10,000 more and Donna $10,000 less than each would have received if the property had passed by will.

The trial court found this disparity unreasonable and directed that one-half of the

$20,000 be returned to the estate for distribution. We find no authority under which a court (trial or appellate) may so modify acts of a decedent.

III. As noted, supra, in Lenders the property of testatrix came to her from her husband except for accumulations thereon. Referring to the inter vivos gifts this appears: "None of it came to her under her husband's will." It was held that there was no evidence which prevented Mrs. Lenders during her lifetime from making bona fide gifts *of her own property* to the extent of the gifts under attack. (Emphasis added)

In the case before us the money in the joint accounts did not come to Amos under Sadie's will. It was his as surviving joint tenant and not as a beneficiary under the will. It was his own property. As we said in Lenders we find nothing which prevented Amos during his lifetime from disposing of his own property as he did.

IV. Based on the theory of the Lenders case that the gifts therein were reasonable the trial court determined what in the court's opinion would be reasonable here.

The trial court's analysis was careful and thorough. We are not prepared to say that his conclusion as to what would be a reasonable distribution of the funds is wrong. However, we do not think it is within our authority to determine that question.

In Lenders these statements appear:

"The finding the gifts were reasonable in amount has substantial support in the evidence. They did not defeat the only contract it may be inferred Mrs. Lenders made."

Nowhere in the opinion is there any suggestion that either the trial court or our court may make an initial or independent determination of what is reasonable. There is a vast difference between a court saying that what a person has done with his own property is reasonable and not in violation of a contract and a court substituting its own opinion as to what would be reasonable.

In the case before us if the transfers were in violation of Amos Hartsock's contract we cannot place our approval on a partial violation. If they were not violative of his contract we have no authority to interfere with what he did with his own property.

V. The money represented by the savings accounts here involved was Amos Hartsock's own property. It did not come to him through the estate of his deceased wife. He disposed of it by inter vivos transfers. The property never became a part of his estate. There is no evidence to support a holding that the transfers were in violation of any contract obligations.

To the extent the judgment and decree of the trial court vests the right and title to the joint savings accounts in Harlan A. Hartsock, the case is affirmed. To the extent that Harlan A. Hartsock was ordered to account to and pay $10,000 with interest to the estate of Amos S. Hartsock, the case is reversed and remanded for entry of judgment in accord herewith.

Affirmed in part, reversed in part and remanded.

GARFIELD, C. J., and MOORE, STUART, MASON and RAWLINGS, JJ., concur.

LARSON, BECKER and LeGRAND, JJ., concur in the result.