**Henry FLOHR, Jr., Appellant
(Defendant below),**

v.

**A. B. WALKER, Appellee
(Plaintiff below).**

No. 4272.

Supreme Court of Wyoming.

April 5, 1974.

Harold M. Johnson, Rawlins, for appellant.

C. L. Bates and Gerald K. Russell, Rawlins, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiff, A. B. Walker, was granted a judgment in district court, holding that he was entitled to have certificates of deposit in the amount of some $44,000, formerly in the custody of defendant, Henry Flohr, Jr., who was decreed to have no interest in the certificates—neither party to cash, liquidate, or in any manner change them until further order of the court. Defendant, who had counterclaimed, appealed, requesting both a reversal of the judgment and the affirmative relief he had sought. Certain facts are not disputed.

Walker, at the time of the trial eighty-eight years of age, a former rancher and a longtime resident of Carbon County, was married to Madeline Annie Walker, who died in 1961. There were two children of the union, Leonard Walker, who died in 1957, and Alice Flohr, the wife of defendant, who died in 1967. After the Walkers' retirement from their ranch, they lived in Saratoga, their home being adjacent to the

Flohrs; and their relationship was most amicable. On February 23, 1960, plaintiff and his wife executed a joint and mutual will, the germane portions as far as this suit is concerned, read as follows:

"We * * * do mutually in consideration of the other making their will, and of the provisions made herein in each other's behalf, agree that this, our last will and testament, cannot be changed or varied by either without the consent in writing of the other.

* * * * * *

"THIRD. We give unto the survivor of the testator and tesatrix [sic], as the case may be, all personal and real property, of every nature and description, and wherever located, which either or both of us may now or hereafter own, except as noted in the fourth paragraph hereof.

"FOURTH. Alice Walker Flohr, our daughter, shall have Lots 5, 7, and 8, Block 3, Glenroy Addition, to the Town of Saratoga, Carbon County, Wyoming, together with all improvements and personal property thereon located, excepting that Albert B. Walker, testator, should Madeline Annie Walker, testatrix, predecease him, have the use of the property in this paragraph mentioned, during his life time.

"FIFTH. Upon the death of both of us, all our personal and real property, of every nature and description, and wherever located, which we may now have or hereafter acquire, shall be given to our said daughter, Alice Walker Flohr, or should Alice Walker Flohr predecease us, then to our son-in-law, Henry Flohr, Jr."

Although there was considerable evidence about the sources of the money with which the certificates of deposit had been purchased, there is for the purposes of this suit no necessity to go beyond the testimony of plaintiff:

"Q Now, at the time you and Mrs. Walker were alive you and she had all your property in joint tenancy, isn't that true? A That's right.

"Q And when she died you became the owner of the securities? A Yes, sir.

"Q And after that did you put your money in joint tenancy with your daughter, Alice? A Yes, sir.

"Q And then after Alice died you put it in joint tenancy with Henry [defendant], isn't that right? A That's right.

"Q Now, why did you use joint tenancies rather than leave it in your name individually and probate the estate? * * * A Well, of course I would have had it go through Court. If anything happened to me my estate would have had to go through the Courts again and the way it was put, with Henry's name on there, he could do what he wanted to with it.

"Q And that was to save court costs, wasn't it? A Yes, you bet."

Everything was harmonious between the parties until 1969 when plaintiff had an automobile accident and defendant thereafter prevented him from driving his automobile, which resulted in some misunderstanding; and plaintiff asked for the will and certificates. When this was refused, the suit resulted.

Plaintiff in 1972 drew a new will which would prevent defendant from receiving any of his estate and testified that if he secured possession of the certificates he would change them to the joint names of himself and someone other than Flohr.

Defendant argues that the judgment is contrary to law and not sustained by the evidence; that the joint and mutual will of plaintiff and his wife expressed a valid agreement, which under the circumstances since occurring makes defendant the sole beneficiary of the contract; and that plaintiff should be enjoined from making any gift, conveyance, or transfer which would be testamentary in character and prevent defendant from inheriting under the will or succeeding as surviving joint tenant. He concedes, however, that plaintiff should be permitted to call upon either the interest from the certificates or the

principal amount to meet his legitimate needs during his lifetime.

Plaintiff argues that although the 1960 will was irrevocable without written consent during the testators' lifetime such consent was unnecessary after the death of either since the survivor would have absolute unconditional ownership of any property passing by the will with complete power of inter vivos or testamentary transfer. He says further that under paragraph five of the will the conditional bequest to Flohr takes effect only on the simultaneous deaths of testator and testatrix. We find no substantiation for these positions either in the brief or oral argument. We note but are unimpressed by the emphasis placed by counsel upon a statement from In re Stringer's Estate, 80 Wyo. 389, 343 P.2d 508, 522:

> " * * * the deceased's obligations under the contract evidenced by the 1949 instrument *must be discharged and satisfied during the administration of the deceased's* [referring to the survivor upon his death] *estate* * * *." (Emphasis and bracketed statement supplied by plaintiff.)

To us this statement in Stringer would seem clearly to mean that the obligations under the contract contained in the will must be discharged during the stated time so that the provisions thereof may be satisfied before the estate is otherwise distributed, but it does not imply that rights growing out of the contract came into existence only upon the death of the surviving joint testator.

Although the record here does not show the rationale for the judgment, plaintiff's counsel says:

> "The Trial Court is its Memorandum Decision held that the 1960 joint Will, though not probated, is nonetheless ef-

fective, but is irrelevant to the issues herein because the specific bequests therein have been paid [1] and the only property in the estate is the real estate as to which Appellee has a life estate. The Court noted that the terms of the 1960 Will were probably contractual but of no concern in this action since the source of the funds used to purchase the certificates of deposit were joint tenancy properties which passed to Appellee by right of survivorship and not by Will, and thus were unaffected by the provisions of the Will."

It may be desirable during our analysis of the problem to bear in mind the viewpoint thus attributed to the trial court.

■ As previously indicated, plaintiff, without challenging the general contractual effect of the joint and mutual will under the interpretation announced by In re Stringer's Estate, supra, 343 P.2d at 514–515, urges that Flohr had no interest in Walker property and therefore no standing to secure relief in the action. In seeking to rebut defendant's implication that this court—based on the authority of 57 Am. Jur. Wills, § 718—could enforce a trust against the plaintiff to restrict his use and consumption of the certificates of deposit within his lifetime, plaintiff says that in none of the four more recent cases cited by that encyclopedic work[2] was a constructive trust entertained during the lifetime of the surviving testator. We are unconvinced that this circumstance is of any significance. The important question is whether or not equity will permit the violation of a contract between the testators of a joint and mutual will. The impressing of a constructive trust is merely a tool of the court to work out an equitable interest in the simplest fashion. Bogert, Trusts and Trustees, § 471, p. 7 (2 ed.).

---

1. It is agreed by the parties that specific bequests to the grandchildren for which the will provided had been paid by plaintiff in 1967.

2. Godwin v. Wachovia Bank & Trust Company, 259 N.C. 520, 131 S.E.2d 456; Olive v. Biggs, 276 N.C. 445, 173 S.E.2d 301; O'Connor v. Immele, 77 N.D. 346, 43 N.W.2d 649; Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588.

When considering the authorities which are claimed to deal with situations similar to the one at bar, we keep in mind that cases dealing with the basic problem ordinarily demonstrate the wording of the wills as well as the circumstances relating to properties to have influenced if not controlled the decisions.

McCuen v. Hartsock, Iowa, 159 N.W.2d 455, is somewhat difficult of analysis because of multiple bases for the decision. There the senior Hartsocks, being the parents of a son and daughter, made a joint, mutual, and contractual will; and in item five the husband had provided:

"I, Amos S. Hartsock, do hereby give, devise and bequeath all personal property of which I may die seized or possessed and wherever situated to Sadie B. Hartsock, the same to be her absolute property, but if she does not survive me then I give, devise and bequeath said property to my children  *  *  *  to share and share alike."

The daughter, claiming a breach of the terms of the joint, mutual, and contractual will when the money in a joint savings account was not shared equally with her, sued, arguing that her father, who had survived his wife, was obligated to give his personal property to the two children, share and share alike. The trial court did not permit this; and the supreme court, relying to some extent on In re Estate of Lenders, 247 Iowa 1205, 78 N.W.2d 536, quoted that case to the effect that where the contract covers *only* what property the promisor *may leave at his death* the promisor remains free to use, control, and dispose of property in his lifetime, and transfers or conveyances by him before his death are valid unless made with intent to defraud, even though no consideration therefore is given, but that such contracts do not prevent the making of gifts by the promisor in his lifetime provided the gifts are reasonable, absolute, bona fide, not testamentary in effect, and not made for the purpose of defeating the contract or having such effect.

As we read both Hartsock and Lenders, the pertinent determinative clause in each of the wills considered differed materially from the Walker will, which provided that each testator gave the survivor "all personal and real property, of every nature and description, and wherever located, which either or both of us may now or hereafter own," and "Upon the death of both of us, all our personal and real property, of every nature and description, and wherever located, which we may now have or hereafter acquire, shall be given to  *  *  *  our son-in-law, Henry Flohr, Jr."

In Olive v. Biggs, 276 N.C. 445, 173 S. E.2d 301, where there was a joint will, the surviving husband was prevented from conveying property previously owned by his wife in her own name to the detriment of a contingent beneficiary in the will, the court there saying, 173 S.E.2d at 312:

"The great weight of authority is to the effect that where a husband and wife enter into a contract, otherwise valid, to make, and do make, a joint will or separate wills, whereby each devises his or her property to the survivor of them and the survivor devises his or her property to others, according to a specified plan of distribution, and one spouse dies without revoking his or her will, the survivor, accepting the benefits of the will of the deceased spouse is bound by the contract. His or her subsequent revocation of the will is a breach of such contract for which a court of equity will give relief in a suit by those who would have been the beneficiaries of such will had the survivor not revoked it. In such event, equity will fasten a trust upon the properties which the survivor so contracted to devise, which trust is enforceable against a subsequent taker of the property other than a bona fide purchaser for value without notice.  *  *  * "

O'Connor v. Immele, 77 N.D. 346, 43 N. W.2d 649, dealt with an action for specific performance to enforce an alleged contract of a husband and wife to make a reciprocal and mutual will in which Mable

O'Connor, a niece, was beneficiary in the event of death of the survivor of the Sweeney couple. Some years later Mrs. Sweeney died and shortly thereafter Mr. Sweeney revoked the mutual will and designated a niece, Frances Immele, as the sole beneficiary. The trial court concluded that there was a contract to dispose of the estate by mutual and reciprocal wills and that by breaching this the surviving testator became liable in damages but ruled that the statute of limitation had run, on which ruling the supreme court reversed, ordering judgment for plaintiff.

In Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588, an action for declaratory judgment to construe a joint will of husband and wife in the light of two codicils, which changed the provisions of the joint will, executed by the wife after the husband's death, the supreme court held the will to be contractual, calling attention to the provision therein that the survivor should have all of the estate, "which either or both of us may own at our death * * * to be used, enjoyed, occupied, and conveyed by such survivor for and during his or her lifetime, as the case may be, and that upon the death of such survivor any of such estate then remaining shall be divided among the persons following * * *." The court said that although the surviving testator could technically have revoked her will the beneficiaries named therein would have had a cause of action in an equitable proceeding to receive their rights.

In Rucker v. Harris, 91 Ill.App.2d 208, 234 N.E.2d 392, the court by sustaining an action compelling the execution of a deed made effective their ruling that a joint will was a contract for the devolution of all the property of the parties and that the surviving wife held only a life interest in the property formerly held by the two in joint tenancy and could convey no greater interest than that.

The general rule seems to be that a joint and mutual will executed pursuant to an agreement based on valuable consideration is contractual as well as testamentary and becomes an irrevocable obligation on the part of the surviving testator upon the death of the other·party testate under a will which is in accord with the terms of the agreement. In re Estate of Wade, 202 Kan. 380, 449 P.2d 488, 493; Godwin v. Wachovia Bank & Trust Company, 259 N. C. 520, 131 S.E.2d 456, 462–463; Alocco v. Fouche, 190 Cal.App.2d 244, 11 Cal.Rptr. 818, 822; 57 Am.Jur. Wills, § 712; 97 C. J.S. Wills, § 1367e(2), p. 307. In re Stringer's Estate, supra, 343 P.2d at 514–515, skirted this viewpoint and is consistent with the mentioned rule if not implicitly stating it. Admittedly, the Stringer case held that the provisions of a mutual will were in fact a contract to make a will.

In what has been said to be a leading case on the subject, Tooker v. Vreeland, 92 N.J.Eq. 340, 112 A. 665, 668; 93 N.J.Eq. 224, 115 A. 255, the court said:

"Unquestionably, Mr. and Mrs. Tooker's primary concern was each other, and it may well be that they would have provided, one for the other, in the manner they did, wholly thoughtless of a bargain, but, be that as it may, the fact nevertheless is that they, in consideration of reciprocal bequests to themselves and those of their choice, bound themselves to abide the provisions of the mutual wills, and Mrs. Tooker, having accepted the benefit of her husband's gift, became legally, and in conscience, bound to carry out the obligation she undertook."

The general rule announced by Wade is sometimes stated in another fashion by the authorities. For instance, 1 Page, Wills, § 10.3, pp. 441–442 (Bowe-Parker Rev.1960), says:

"Language is occasionally used which seems to say that a will which is made in performance of a contract to make a will is irrevocable. It is said that a joint or mutual will may be revoked by either party while both are living upon notice to the other, but when one of the parties dies before the other has given notice, the will becomes irrevocable. Language

of this sort is often used very loosely. While the courts talk about the will as irrevocable they probably mean that the contract to make the will is enforceable if the contract is not performed. Some of the courts which have used this language, have pointed out that it is the contract and not the will that becomes irrevocable at the death of one of the parties. It has been said that after the death of one, the survivor could not violate the contract by revoking the will which the survivor made in performance of the contract. * * * "

From these cited authorities, it seems unquestioned that A. B. Walker by making the joint and mutual will with his wife entered into a contract which after her death was irrevocable and that such contract is enforceable by a third party, who would have benefited from the provisions of the will. As pointed out in various of the cases analyzed, the circumstance that all of the Walkers' property at the time the will was executed and until Mrs. Walker's death was in joint tenancy with the right of survivorship, although standing alone might have served to transfer the property to him at the wife's death, did not free him from the obligation of the joint, mutual, and contractual will, the benefits of which flowed originally to the wife, then to the daughter, and on her death to Flohr. It follows that the trial court's holding Flohr to have no right, title, or interest in the certificates of deposit while technically correct (if the joint tenancy with right of survivor aspect be disregarded) should have been qualified to rule that he had rights under the contract contained in the 1960 will entitling him to have that will declared valid and binding upon plaintiff, which relief he asked in his counterclaim. The nature of such relief is within the discretion of the trial court but must be consistent with the views herein expressed. In that regard, Mr. Walker should be allowed the use of the income and reasonable portions of the principal for his support and ordinary expenditures; Daniels v. Aharonian, 63 R.I. 282, 7 A.2d

767, 770; and see Sample v. Butler University, 211 Ind. 122, 4 N.E.2d 545, 549, 5 N.E.2d 888, 108 A.L.R. 857; but plaintiff cannot dissipate the estate or alienate by inter vivos transfers or by will to defeat the provisions of paragraph five of the 1960 will bequeathing and devising to Flohr.

The judgment of the trial court is reversed and remanded for such disposition as the trial court may deem proper to effectuate the views herein expressed.

Reversed and remanded with instructions.