**RICHARDSON et al. v. CITY TRUST CO. et al.**

Circuit Court of Appeals, Seventh Circuit. June 19, 1928.

No. 3996.

1. **Trusts ⬅140(3)—Trust agreement regarding property held by husband and wife as tenants by entirety showed intention that property should go to husband's children at death of survivor.**

Trust agreement reciting that husband vested his real estate in his wife and himself as tenants by entireties, consideration therefor being that survivor should by will devise all real estate remaining at death to husband's four children, and providing wife should make will devising all real estate so received from husband to husband's children, *held* to show intent of parties that property held by entireties should go to the four children at death of survivor.

2. **Wills ⬅59—Wife's agreement to devise property to children in consideration for husband's vesting property in husband and wife as tenants by the entireties, was valid.**

Wife's agreement to make will devising property to husband's children, in consideration for husband's vesting his land in husband and wife as tenants by the entireties, was valid.

3. **Wills ⬅68—If promise to make will is repudiated action may be commenced during promisor's lifetime.**

If valid promise to make will is repudiated, action may be commenced thereon during lifetime of promisor.

Appeal from the District Court of the United States for the District of Indiana.

Suit by Minnie Richardson and Jessie M. Devine against the City Trust Company and others. From a decree dismissing the bill, plaintiffs appeal. Reversed and remanded, with directions.

Robert A. Black, of Cincinnati, Ohio., for appellants.

James A. Ross, of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. On the ground that it disclosed no cause of action, the District Court, on motion under equity rule 29, dismissed appellants' bill, to enjoin the City Trust Company and to determine the rights of the parties to certain property in Indianapolis, Ind.

John S. Lazarus, of Indianapolis, by a proper instrument, vested in himself and wife, by the entirety, certain real estate, under a verbal agreement that each should make a will, so that the estate would, at the death of the survivor of them, vest in his four children, only three of whom were the children of his wife, Ella Lazarus. Lazarus and his wife conveyed a portion of the real estate in question to John S. Lazarus Company, a corporation, and each took certain shares of the capital stock of said company, in consideration thereof.

In 1914, John S. and Ella Lazarus, his wife, entered into the written agreement, called trust agreement, following:

"This agreement, entered into in duplicate by and between John S. Lazarus and Ella Lazarus, husband and wife, of Indian-

apolis, Indiana, this first day of July, 1914, witnesseth:

"That whereas, said John S. Lazarus was the sole owner of fee simple title of certain real estate which he caused by proper conveyance to be transferred to himself and wife as tenants by entirety, in consideration and upon the agreement that the survivor should by will devise all of said real estate as well as all other property real and personal remaining at their death to Minnie H. Richardson, Jessie M. Devine, George Lazarus and Roy G. Lazarus, the four children of the said John S. Lazarus (the last three named being the children born to the said parties hereto), in equal proportions or to the descendants of such of the above-named children, per stirpes; and

"Whereas, the said parties hereto conveyed certain of said real estate so transferred to them as above stated to the John S. Lazarus Company, a corporation organized under the laws of the state of Indiana, each of the parties hereto taking certain shares of the capital stock of said company for the consideration of said real estate so conveyed; and

"Whereas, it is the purpose and intention of the parties hereto that all of their property held jointly or as tenants by entirety as well as all other property held individually, including personal property and the shares of stock in the said John S. Lazarus Company coming to the parties hereto on account of the conveyances to the said company, be at the death of the survivor, transferred or devised equally to the said four children of the said John S. Lazarus or to the descendants of such children as are not living, per stirpes; and,

"Whereas, the said John S. Lazarus has executed his will and testament of even date herewith devising all of the real and personal estate of which he may die seized and including all of the shares owned by him of the capital stock of the said John S. Lazarus Company in trust for the use and enjoyment of the said Ella Lazarus if she should survive him, for and during her natural life, and at her death equally to his four children or the descendants of such as may not be then living, per stirpes:

"Now therefore, pursuant to the agreement and for the consideration of the real estate so conveyed to the said Ella Lazarus and for the shares of stock in the John S. Lazarus Company growing out of said transactions and of the benefits derived and to be derived, the said Ella Lazarus does hereby agree in the event of her surviving her said husband to abide by the provisions made for her in the said last will and testament of her said husband and in any event to especially transfer or convey or by her last will and testament, whether she survive her said husband or not, devise all of the real estate so received by her from her said husband as above stated, together with all of the shares of stock in the John S. Lazarus Company, equally to the four children of the said John S. Lazarus or to the descendants of such as may not then be living at the time of her death, per stirpes.

"The said John S. Lazarus also agrees, if he survives said wife, to transfer, convey, or include in his last will and testament all of the real estate and personal property received from his said wife equally to the four children or to the descendants of such as may not then be living, per stirpes.

"The said Ella Lazarus does hereby state that she read the last will and testament of her said husband bearing even date herewith, and that she is familiar with the terms and conditions thereof, and she has entered into this agreement without fear or coercion of her husband and of her own free will and in conformity with the agreement and the promise when said real estate and personal property was received by her from her said husband as above set forth. The parties hereto do mutually agree that the property so held by them as tenants in entirety or the personal property coming to them from the transfer thereof to the said John S. Lazarus Company is by them held in trust for the four children or their descendants of the said John S. Lazarus, and that the essence of this contract shall be for the equal benefit of the said four children as hereinabove named.

"In witness whereof, the parties hereto have set their hands and seals the day and year first above written.

"[Signed]    John S. Lazarus.    [L. S.]
"[Signed]    Ella Lazarus.    [L. S.]"

January 30, 1918, John S. Lazarus died testate, survived by the individual parties to this suit as his widow, children, and only heirs at law.

December 4, 1919, the individual parties hereto entered into a written agreement, whereby Ella Lazarus confirmed and ratified the declaration of trust in the trust agreement and as a part thereof the children agreed that they would execute the necessary instruments to complete, clear of incumbrance, two apartment buildings theretofore commenced by the widow on a part of the property here in question. That agreement,

together with the trust agreement, was recorded on January 2, 1920.

Ella G. Lazarus and City Trust Company entered into an agreement, reciting as a premise that Ella G. Lazarus owned the real estate in question in fee simple, but subject to certain rights of the children of John S. Lazarus by virtue of said trust agreement.

December 5, 1919, the children signed a stipulation, attached to the contract between Ella G. Lazarus and the trust company, by which they assented to the making of the contract between Ella G. Lazarus and the trust company, but without binding themselves to the performance of any of the terms thereof. It was also provided by said contract that Ella G. Lazarus should organize a corporation under the laws of the state of Indiana, to be known as the St. James Realty Company, with a capital stock of $100,000 in preferred shares, and $50,000, or 500 shares, of common stock. Ella G. Lazarus was to convey the real estate in question to the corporation and cause the said heirs of said John S. Lazarus to join her therein. The trust company was to, and did, purchase the preferred stock for $90,000. It is averred that the trust company knew the terms and conditions of the trust agreement. There was also attached to the contract with the trust company, the following:

"We, the undersigned, heirs, legatees, and devisees of John S. Lazarus, deceased, having read all the terms and conditions of the foregoing contract, do hereby consent to the terms and conditions and the making thereof, without binding themselves in the performance of any of the affirmative terms, but waiving in favor of the preferred stockholders of the said company any right, interest or title in and to the said real estate of the said corporation as first above described."

At the time that stipulation was signed, the trust company represented to complainants that $80,000 would complete and pay for the buildings in question, so that the realty company would have remaining from the sale of the preferred stock $10,000 in the treasury for operating capital. The trust company knew that, relying upon that statement, complainants signed the stipulation. The building was not completed for that sum, and on July 31, 1920, without the knowledge or consent of the complainants, Ella G. Lazarus and the trust company entered into a further agreement, whereby she turned over to the trust company all of the common stock of the realty company to secure further advances of money to complete the improvements, which it is alleged the trust company claimed was, at the commencement of this suit, $85,676.31. It is alleged that the property in question was not, at the commencement of the suit, worth to exceed $150,000, and that any sum expended in excess of the sum of $100,000 was wholly wasted.

The alleged wrongful expenditures of money in excess of the proceeds of the preferred stock, the taking by the trust company from Ella G. Lazarus of the common stock of the realty company, and the threat to sell the same for the purpose of satisfying claims of the trust company for money advanced, caused the bringing of this suit.

The contention of appellants is that the trust agreement vested in the children the title to the property then held by John S. Lazarus and Ella G. Lazarus, as tenants by entirety. Appellees' position is that it was merely an agreement to will to the four children what, if any, remained thereof, at the death of the survivor, and it is based upon the proposition that the language in the first whereas must be considered as one of the binding terms of the contract, and that, as the language in the subsequent part of the contract, stating that the property is held in trust, is inconsistent therewith, the former must control.

The first whereas purports to be a recital of the fact that Lazarus vested real estate, of which he was the sole owner, in his wife and himself as tenants by entirety, the consideration therefor being that the "survivor should by will devise all of said real estate, as well as all other property, real and personal, remaining at their death;" to the four children of Lazarus. This is a recital of an earlier agreement which is for the first time here reduced to writing.

The next whereas shows that certain of the real estate had been conveyed to a corporation, in consideration of which each of the parties had taken certain shares of the capital stock of the corporation.

The third whereas is a statement of what was then the intention of the parties, namely, that all of their property, whether held as tenants by entirety or not, should, at the death of the survivor, be devised equally to the four children.

The fourth whereas is a statement that John S. Lazarus has made a will "devising all of the real and personal estate of which he may die seized * * * in trust for the use and enjoyment of the said Ella Lazarus * * * for and during her natural life," and then to the four children.

Following those recitals, is a paragraph

stating that Ella Lazarus agrees that, in the event she survives her husband, she will "abide by the provisions made for her in the said last will and testament of her said husband and in any event to especially transfer or convey or by her last will and testament, whether she survive her husband or not, devise all of the real estate so received by her from her said husband, as above stated, together with all of the shares of stock in the said John S. Lazarus Company, equally to the four children of the said John S. Lazarus," etc.

So far as appears, the will of Lazarus made no attempt to dispose of the estate held as tenants by entirety. In any event, what Ella Lazarus took under that will was in trust for her during her natural life only, and it was that will which she agreed to abide by, if she survived her husband. Her further agreement was that, whether she survived him or not, she would "devise all of the real estate so received by her from her said husband, as above stated, together with all of the shares of stock in the said Lazarus Company," equally to the four children of the said John S. Lazarus, etc. Whether John S. Lazarus owned other real estate than that in question does not appear, but the presumption arising from the language used in his will and of the last-quoted paragraph is not that Ella Lazarus should consume the real estate and shares of stock in the John S. Lazarus Company, and the other property, if any, taken by her under the will, but that she should have only the use of it, and that the fee of the real estate, held as tenants by entirety, and the shares of stock should go to the children.

The next paragraph is an agreement on the part of Lazarus that he will convey or include in his last will and testament "all of the real estate and personal property received from his said wife equally to the four children." This paragraph is followed by the statement of Ella Lazarus that she has read and fully understands the will of John S. Lazarus, and that she freely accepts the terms thereof, and "she has entered into this agreement without fear or coercion of her husband and of her own free will *and in conformity with the agreement and the promise when said real estate and personal property was received by her from her said husband as above set out.*" (Italics ours.)

The last paragraph provides:

"The parties hereto do mutually agree that the property so held by them as tenants in entirety or the personal property coming to them from the transfer thereof to the said John S. Lazarus Company is by them held in trust for the four children or their descendants of the said John S. Lazarus, and that the essence of this contract shall be for the equal benefit of the said four children as hereinabove named."

[1–3] We find nothing inconsistent in the provisions of the trust agreement, and we are of opinion that it is clear that the intent and purpose of the parties, as there expressed, was that the property held by entirety should go to the four children at the death of the survivor. We are further of opinion that, if the trust agreement be held invalid, or if it had never been made, the appellants would still have the right to maintain this suit. Even if that instrument be void, because of inconsistencies, it would still be a writing available to prove the original agreement between Lazarus and his wife, under which the property in question was vested in them as tenants by entirety. Lazarus and his wife did not take the property from John S. Lazarus as tenants by entirety without more, but it was taken "in consideration and upon the agreement that the survivor should by will devise all of said real estate, as well as all other property, real and personal, remaining" at the death of the survivor. That was an agreement, upon consideration received, to make a will, which is valid. Roehl v. Haumesser, 114 Ind. 311, 316, 15 N. E. 345; Ex parte Simons, 247 U. S. 231, 239, 38 S. Ct. 497, 62 L. Ed. 1094. If such promise is repudiated, action may be commenced thereon during the lifetime of the promisor. Lovett v. Lovett (Ind. App.) 157 N. E. 104; Wold v. Wold, 138 Minn. 409, 165 N. W. 229; Osborn v. Hoyt, 181 Cal. 336, 184 P. 854. In no event, would the survivor have the right to convert the property to her own use.

The facts shown are not such as will enable us to determine, as a matter of law, the question of estoppel. There is in the record an abundance of facts that show equitable grounds for relief.

The case is reversed and remanded, with directions to set aside the dismissal and hear the case upon its merits.