**Alexander R. THOMPSON**

v.

**Virginia W.P. THOMPSON.**

**No. 83–20–Appeal.**

Supreme Court of Rhode Island.

July 10, 1985.

Thomas W. Pearlman, Morton J. Marks, Pearlman & Vogel, Providence, for plaintiff.

Francis A. Gaschen, Gaschen Law Offices, Pawtucket, for defendant.

## OPINION

KELLEHER, Justice.

This litigation involves the assets of the estate of Dr. Edward R. Thompson (Edward), who died testate on October 23, 1973. Edward was survived by his third wife, defendant Virginia W.P. Thompson (Virginia), and by four children from his previous marriages, including the plaintiff, Alexander R. Thompson (Alexander). Alexander commenced this action in 1978 against Virginia in his dual capacities as administrator, c.t.a., of Edward's estate and beneficiary under his will, alleging that Virginia has failed to fulfill an agreement she made with Edward prior to his death requiring her, in accordance with Edward's will, to place all of the estate's assets, as well as her own, in a trust fund for her benefit while living, with the remainder to be distributed at her death to Edward's four children. The Superior Court trial justice dismissed the action pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure for failure to state a claim upon which relief could be granted. We reverse.

On October 12, 1973, Edward executed a will providing that Virginia would receive all of his "tangible personal property" upon his death and stipulating that the remainder of the estate should be placed in trust. Virginia was to have the use of the income and trustee-approved portions of the principal of the trust during her lifetime with any remainder at her death to be distributed among the four children, terminating the trust. At the time that the will was executed, Edward was informed by his attorney that all of his real property, a substantial portion of which had belonged to Virginia prior to her marriage to Edward, was held jointly with his wife and would pass to her independently of the will. As a result, no assets would remain in the estate

with which to fund the trust. Indeed, no trust has ever been established.[1]

Alexander alleges that Edward's will was executed pursuant to an oral agreement with Virginia whereby they both promised to execute mutual wills in favor of each other and, ultimately, Edward's four children. Thus, to be effective, Edward's will depended upon Virginia's faithful performance of their agreement after his death. Alexander's second amended complaint alleges that Virginia has failed to establish the trust and/or execute a will in favor of the four children.[2] It further states that Virginia has wrongfully converted assets of the estate and is likely to waste, convey, or conceal other assets. Alexander sought a declaratory judgment regarding the rights of the respective parties, injunctive relief, an accounting, and specific performance of the agreement. He further requested the imposition of a constructive or resulting trust for the benefit of himself and his siblings.

Virginia denied the existence of an agreement between herself and Edward to make mutual wills or establish a trust. She also counterclaimed for $50,000 to compensate her for the harassment, humiliation, and embarrassment she suffered as a result of the allegations in Alexander's complaint.

After argument of counsel, the trial justice granted Virginia's motion to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. He stated without elaboration, "I'm going to grant your motion," apparently accepting Virginia's argument that Alexander could not pursue his claim until Virginia actually died without fully performing her obligations under the agreement. We disagree.

In ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assuming the truth of all the allegations therein and resolving any doubts in the plaintiff's favor. *Romanello v. Maguire*, 122 R.I. 171, 176, 404 A.2d 833, 835–36 (1979). The motion is granted only when "it appears to a certainty that [a plaintiff] will not be entitled to relief under any set of facts which might be proved in support of his claim." *Salvadore v. Major Electric & Supply, Inc.*, — R.I. —, —, 469 A.2d 353, 357 (1983) (quoting *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 12, 227 A.2d 582, 584 (1967)). Applying this standard, we believe that Alexander's second amended complaint sufficiently alleges a claim that, if proven at trial, would entitle him to relief.

More than eighty years ago we recognized the validity of oral agreements to dispose of property by will. *Spencer v. Spencer*, 25 R.I. 239, 241, 55 A. 637, 637 (1903). Such contracts, we held, "may be enforced in equity, after [the promisor's] decease, against his heirs, devisees, or personal representatives. * * * There can be no difference in principle between contracts to be performed in life or at death." *Id.* at 241, 55 A. at 637–38. The statute of frauds, G.L. 1956 (1969 Reenactment) § 9–1–4, does not prohibit enforcement of such oral agreements where completed performance of one party is demonstrated, if the performance is "referable exclusively to the contract." *Lambert v. Lambert*, 82 R.I. 166, 171, 106 A.2d 729, 731 (1954). *See also Baumgartner v. Seidel*, 75 R.I. 243, 246, 65 A.2d 697, 698 (1949). Thus, if the alleged contract is supported by consideration and is otherwise valid, it is binding and may be enforced by "any of the persons for whose benefit, after the death of the sur-

---

1. While there is some discussion in the briefs about the existence of proceedings at the Probate-Court level relative to Edward's estate, there is no evidence in the record to support these statements. We are therefore unable to determine precisely what happened after Edward's death with respect to the probate of his estate.

2. Alexander amended his original complaint on July 6, 1979. His amended complaint was conditionally dismissed under Super.R.Civ.P. 12(b)(6) on October 14, 1982, with leave to amend. His second amended complaint was then filed on October 27, 1982.

viving party, the agreement was made." *Daniels v. Aharonian*, 63 R.I. 282, 289, 7 A.2d 767, 770 (1939).

■ Viewed in the light most favorable to Alexander, his second amended complaint sufficiently alleges facts that, if proven at trial, would establish the existence of an oral agreement supported by consideration between Edward and Virginia to dispose of their property in favor of Alexander and his siblings. The complaint further recites Alexander's position as a beneficiary of both Edward's will and the agreement between Edward and Virginia, establishing his standing to maintain the action. In addition, the complaint alleges that Edward had fully performed his part of the agreement by providing "among other things, services and goods to the defendant, and [withholding] taking any action that might have been adverse to defendant" during his lifetime, as well as by executing the will that was in effect at the time of his death.

■ The one allegation noticeably absent from Alexander's complaint was delicately highlighted by the trial justice, who asked, "Has [Virginia] died?" Counsel's negative response to this query apparently convinced the trial justice that Alexander's claim was premature, accruing under Rhode Island law only if the agreement remained unfulfilled at Virginia's death. While this specific issue has not been previously addressed by this court, we have concluded that a mutual agreement to dispose of property by will may be enforced *prior* to the death of the surviving but recalcitrant promisor where the promisor has repudiated his or her responsibilities under the contract.

The issue before us has been variously addressed by other jurisdictions. The Court of Appeals for the Seventh Circuit dealt with this problem in a case that is factually similar to the one presently before us. In *Richardson v. City Trust Co.*, 27 F.2d 35 (7th Cir.1928), the decedent, John, and his wife, Ella, orally agreed to make mutual wills devising their property, upon the death of whoever survived, to John's four children, one of whom was not Ella's child. In consideration for Ella's promise, John transferred all of his property to himself and Ella as tenants by the entirety. Eventually, John and Ella executed a trust agreement embodying the terms of their oral contract. Following John's death, Ella took actions that wholly depleted the assets of the estate. The children commenced suit during Ella's lifetime. The court held that John and Ella had agreed "upon consideration received, to make a will, which is valid. * * * If such promise is repudiated, action may be commenced thereon during the lifetime of the promisor. * * * In no event, would the survivor have the right to convert the property to her own use." *Id.* at 38.

In *Harmon v. Aughtry*, 226 S.C. 371, 85 S.E.2d 284 (1955), the defendant agreed, in consideration of a $6,000 loan from the plaintiff, to execute a will bequeathing $6,000 to the plaintiff's wife and to the plaintiff should his wife predecease him. When the defendant failed to execute the will, the plaintiff brought an action to recover the money advanced to the defendant. The defendant responded that the time for performance had not yet arrived. The Supreme Court of South Carolina recognized that as long as the defendant lived, he could fulfill the contract by making the agreed-upon will. However, after reviewing the applicable authorities, the court stated:

"[I]f in his lifetime the promisor repudiates the agreement, or puts it out of his power to perform, as by a conveyance of the property involved to a third person, such conduct may be treated as an anticipatory breach and an action for appropriate relief may be immediately maintained by the promisee against the promisor." *Id.* at 375, 85 S.E.2d at 285–86.

The Supreme Court of Mississippi reached a similar conclusion when it was faced with a related statute-of-limitations problem in *Old Ladies Home Association v. Hall*, 212 Miss. 67, 52 So.2d 650, 54 So.2d

170 (1951). There, the question before the court involved whether the statute of limitations began to run upon the promisor's repudiation of a contract to devise real property or upon the promisor's death. The court held that the promisee could elect either time to pursue his or her claim.

■ We believe that the jurisdictions examined above have taken the most sound and reasonable approach to this problem. An agreement to devise property in a certain way by will is, most fundamentally, a contract like any other. Whether or not the promisor is living, the concern of the parties and the inquiry of the court remains essentially unchanged: Has a binding and enforceable agreement been made that affects the assets of the disputed estate? By allowing an action to be commenced upon the promisor's repudiation of the contract, the interests of both the promisor and the potential beneficiary of the alleged agreement are protected; the promisor who repudiates the contract receives a timely adjudication of his contractual responsibilities, and the beneficiary protects assets that might otherwise be wasted by the repudiating promisor. Where, after repudiation, the parties are forced to wait until the promisor dies before an action can be maintained on the contract, a subsequent adjudication of rights and responsibilities would likely be ineffectual and the contract, though binding and enforceable, would be successfully avoided.

■ The only question remaining is whether Alexander's complaint sufficiently alleges that Virginia has repudiated the contract. Professor Williston states that "in order to give rise to an anticipatory breach of contract, the defendant's refusal to perform must have been positive and unconditional." 11 Williston, *Contracts* § 1322 at 130 (3d ed. Jaeger 1968). The Restatement of Contracts further provides that a repudiation can be evidenced by either a statement to that effect or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." 2 Restatement (Second) *Contracts* § 250 (b) at 272 (1981). A mere allegation of failure to fulfill the contract is insufficient to establish repudiation, but a conveyance of property by the promisor to another, making full performance of the contract impracticable or impossible, has been held to be a repudiation. *Richardson v. City Trust Co.*, 27 F.2d at 38; *Brewer v. Simpson*, 53 Cal.2d 567, 593, 349 P.2d 289, 302, 2 Cal.Rptr. 609, 612 (1960). *See also Harmon v. Aughtry*, 226 S.C. at 375, 85 S.E.2d at 286; 2 Restatement (Second) *Contracts* § 250 (a) and (b), comment *b* and *c* at 273–74; 11 Williston, *Contracts* § 1323 at 135–36.

■ Alexander's complaint alleges in count 4 that Virginia has "wrongfully converted to her own use assets, property, cash, antiques, and furnishings which belong to [Edward's] Estate, as well as to the other plaintiffs." Count 9 alleges that Virginia is "likely to waste, squander, convey, and/or conceal the assets in question." We are persuaded that if these allegations are proven at trial, the trier of fact would be entitled to find that Virginia had repudiated the contract she allegedly entered into with Edward. Thus, Alexander's complaint successfully sets forth the elements of a claim upon which relief can be granted, and Virginia's Rule 12(b)(6) motion was improperly granted. We would note that upon remand, Alexander will be required to prove his case by clear and convincing evidence. *Fanning v. Fanning*, 111 R.I. 116, 117, 302 A.2d 299, 300 (1973).

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings.