**Elton B. RANDALL, Jr.**

v.

**Deborah RANDALL, alias, Executrix of the Will of Esther A. Randall, alias, resident decedent of Warwick, Rhode Island.**

**No. 2009–229–Appeal.**

Supreme Court of Rhode Island.

June 24, 2011.

Elton B. Randall, Jr., pro se.

Sidney W. Paull, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON for the Court.

The plaintiff, Elton B. Randall, Jr., appeals *pro se* from a judgment of the Superior Court dismissing his *de novo* appeal from an order of the Warwick Probate Court. On appeal, the plaintiff argues that the defendant, Deborah Randall, acted improperly with respect to a proposed sale of property from an estate and by not seeking Probate Court approval for a claim for reimbursement from the estate and for an alleged removal of funds from the estate.

This case came before the Supreme Court for oral argument, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments offered by each, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The facts that are relevant to this appeal are as follows. The decedent, Esther A. Randall, was the mother of both plaintiff Elton Randall and defendant Deborah Randall; she was also the mother of Priscilla Ann Randall and Lynn Victoria ("Vicki") Randall.[1] Esther executed a will on February 24, 1984, which provided that, if her husband did not survive her, she left her residuary estate "to [her] four children in equal and even shares." Esther died on September 26, 2005, her husband having predeceased her, and her will was admitted to probate on October 17, 2005. In accordance with the terms of the will, Deborah was appointed as the executrix of her mother's estate.

An inventory determined the total assets of the estate to be in the amount of $263,500, which included the value of real property located at 118 Fostmere Court in Warwick. On March 21, 2006, Deborah filed in the Warwick Probate Court a petition for sale of the Fostmere Court property; and, on May 5, 2006, she filed a claim for reimbursement in the amount of $17,345.02, which amount constituted ex-

penses that she stated she had paid on behalf of the estate.

On May 17, 2006, Elton filed in the Probate Court an objection to the petition for sale of the Fostmere Court property; and, on May 19, 2006, he filed a statement disallowing Deborah's claim for reimbursement. On June 2, 2006, Elton filed a claim to the Fostmere Court property. In that claim, Elton alleged that his mother and father, who resided at the property before their deaths, had made an agreement with him that the premises would pass to him upon the fulfillment of certain conditions. Elton's claim summarized the alleged agreement as follows:

> "[Esther Randall] * * * and Claimant's father, Elton B. Randall, entered into an agreement * * * whereby the Premises would pass to Claimant upon the death of the survivor of them in consideration of services rendered and to be rendered by Claimant to: (a) repair, maintain and improve the Premises, (b) allow them to remain resident in their home for the duration of their joint lives absent extraordinary or skilled medical and nursing care either might require, and (c) assist in their care, support and well-being."

On June 9, 2006, Deborah, in her capacity as executrix of the estate, filed a statement disallowing Elton's claim to the Fostmere Court property; and, on June 13, 2006, Elton filed a petition for Probate Court determination of said claim.

On October 19, 2006, a hearing was held in the Probate Court with respect to (1) the petition for sale of the Fostmere Court property and (2) the claims of Deborah and Elton. On November 9 of the same year, a consent ordered entered whereby

---

1. For the sake of clarity, we shall hereinafter usually refer to the parties and to other members of the Randall family (including two in-laws) by their first names. We certainly intend no disrespect.

(1) the petition to sell the Fostmere Court property was granted; (2) Deborah's claim for reimbursement was allowed; and (3) Elton's claim to the Fostmere Court property was disallowed. The consent order further stated that the Probate Court had made no findings of fact or law with respect to the merits of the just-referenced petition and claims; the consent order also indicated that it was being entered in contemplation of a stipulated appeal by Elton for *de novo* consideration in the Superior Court.

On December 8, 2006, Elton filed in the Superior Court for Kent County the instant appeal from the terms of the above-referenced consent order. In his "Reasons of Appeal," Elton stated that the order should be reversed on numerous grounds, including the allegations: (1) that Deborah failed to seek a Probate Court determination of her claim as required by G.L.1956 § 33–11–8; (2) that the sale of the Fostmere Court property was not necessary to pay the debts and expenses of the estate; and (3) that Elton at that time resided at the Fostmere Court property and that, pursuant to the purported agreement with his parents, he was entitled to the property and had a right to continue residing there.

In December of 2008, a bench trial was held with respect to Elton's appeal before a justice of the Superior Court. At trial, Elton testified that he had lived with his parents in their Fostmere Court home since 1976, except for "a short time" when he had rented a room at a hotel. He further testified that, although he had held various jobs between 1978 and 1996, he had not had a paying job since 1996. Elton stated that, after his father passed away in 1997, his mother had put the Fostmere Court property up for sale but subsequently decided to take it off the market.

Elton then testified that, in 2000, he became engaged to a woman named Betty [2] and that his mother had told him that "[s]he wanted us both to live with her once we became married." According to Elton, his mother had told him that, if she had to spend "one night" alone in the house, she would sell it. He testified that his mother had told him that, if Elton and Betty would live with her until she died, then "the house would be deeded or turned over to [him], that [he] would own the house." He stated that his mother had also told him that, "if she didn't get sick, * * * she was going to give money to the girls and that * * * this house would be given to [him]."

Elton further testified that he could have lived with his mother-in-law after he married Betty, but he stated that he remained in the house with his mother after the marriage because she had asked him to do so. He added that he lived in the Fostmere Court house and cared for his mother from 2000 until her death in 2005; he stated that, during this time, he would perform household chores and otherwise assist his mother.

On cross-examination by Deborah's counsel, Elton acknowledged that his mother had not told any of his sisters in his presence that she was going to have the house become his upon her death. He also stated that he could not recall whether he had told his siblings, during a meeting that took place with respect to the probate of his mother's will, that his mother had told him that she intended to give him the house.

---

**2.** The record does not indicate what Betty's surname was before she married Elton; she is referred to only as "Betty Randall."

Elton's sisters Deborah and Vicki, as well as Deborah's husband, Preston Pelkey, also testified at trial. Deborah testified that, after her father died in 1997, her mother had stated on "numerous occasions" that the Fostmere Court property did not belong to Elton and that it would be "divided." Specifically, Deborah testified on cross-examination that there had been numerous conversations, usually during family dinners, when Elton would state, "[T]his is my house," and his mother would respond, "[N]o, this is not your house. It's my house. It will stay my house and then be divided; sold and divided." Deborah also testified that her mother maintained an active lifestyle after her father died, and Deborah confirmed that her mother had never indicated to her that she was afraid of being alone.

Vicki similarly testified at trial that there had been "many" conversations in her presence with respect to the ownership of the Fostmere Court property. She testified that, in response to Elton's statements that the house would be his some day, her mother would say that it was her house and that it would be "divided up evenly" when she died. Vicki also testified that Elton had a "very contentious relationship" with their parents when he lived at home with them. According to Vicki, Elton had moved out several times at their parents' request, but she added that "they wouldn't turn him away when he came back to live at home." Vicki acknowledged that Elton did assist with household chores, but she added that doing so was "[n]ot of his own volition."

Finally, Deborah's husband, Preston Pelkey, testified that he had "on several occasions" heard Elton say that the house and everything in it would be his when Preston's mother-in-law (Esther) died. Preston stated that, on those occasions, Esther would respond by telling Elton that it was not his house and that, when she "no longer [had] use for it," the house would be "divided four ways." Preston also testified that, based on his observations, Esther was self-sufficient after her husband died in 1997; he added that she remained so until the year of her own death in 2005.

On January 5, 2009, the trial justice issued an eight-page order dismissing Elton's appeal. He stated that the agreement which Elton contended that he had made with his parents whereby (in the trial justice's words) "the premises would pass to him upon the death of the survivor of them, in consideration of services rendered and to be rendered by him," would ordinarily be barred by the Rhode Island statute of frauds, G.L.1956 § 9–1–4, due to the fact that it was never memorialized by a written note or memorandum.[3] However, the trial justice noted that, under Rhode Island law, there is an exception to the statute of frauds if a party can prove by clear and convincing evidence that such an oral contract existed and that the party has completed performance of the contract, if that performance was referable exclusively to the oral contract.

The trial justice stated that Deborah Randall, Vicki Randall, and Preston Pelkey were each "able to credibly recall several similar conversations," during which Esth-

---

**3.** General Laws 1956 § 9–1–4 reads in pertinent part as follows:

"No action shall be brought:

"(1) Whereby to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer time than one year; * * * unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized."

er had told Elton that the house would be divided among the four children, and the trial justice observed that their testimony stood "in stark contrast to that given by Elton." He specifically found the testimony of Deborah and Vicki to be "far more credible" than Elton's, stating that he had "paid close attention to Elton as he testified" and that Elton had a poor memory. The trial justice further stated that, "[o]verall," he was "not impressed with the accuracy of [Elton's] testimony * * *."

Accordingly, the trial justice found that Elton had failed to prove by clear and convincing evidence the existence of an oral contract with his parents whereby the Fostmere Court property would pass to him upon their death if, prior to that time, he lived with them and assisted them with household chores. The trial justice further found that, even if there were such a contract, Elton had failed to prove by clear and convincing evidence that he had completed performance of same. The trial justice stated that, as a result of that failure of proof, Elton's claim to the Fostmere Court property was barred by the statute of frauds.

Elton filed a timely notice of appeal. Thereafter, on September 23, 2010, this Court remanded the case to the Superior Court for entry of final judgment, which judgment entered in favor of Deborah on February 1, 2011.

On appeal, Elton essentially argues that Deborah acted improperly under Rhode Island law with respect to the proposed sale of estate property and because she allegedly did not seek Probate Court approval for her claim for reimbursement from the estate and for her removal of funds from the estate. For her part, Deborah argues that the issue of whether she improperly removed funds was not presented to the trial justice and therefore has been waived. She argues that the sole issue before this Court on appeal is whether Esther made an enforceable oral promise to give the Fostmere Court property to Elton upon her death; Deborah contends that the trial justice was correct in finding that there was not sufficient evidence to prove the existence of such a promise.

## II

### Standard of Review

On review, we give deference to the factual findings of a trial justice sitting without a jury in a civil case. *B.S. International Ltd. v. JMAM, LLC*, 13 A.3d 1057, 1062 (R.I.2011); *Costa v. Silva*, 996 A.2d 607, 611 (R.I.2010). In addition, we have observed that "[i]t is self-evident that a trial justice sitting without a jury must often make credibility determinations in order to arrive at the necessary findings of fact." *B.S. International Ltd.*, 13 A.3d at 1062. Because the trial justice "has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record," *In re Dissolution of Anderson, Zangari & Bossian*, 888 A.2d 973, 975 (R.I.2006), we "accord a substantial amount of deference" to the credibility determinations made by the trial justice. *B.S. International Ltd.*, 13 A.3d at 1062. Accordingly, "we will not disturb factual findings unless the record shows that the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence on a controlling issue." *Id.; see also In re Dissolution of Anderson, Zangari & Bossian*, 888 A.2d at 975.

## III

### Analysis

With respect to Elton's contention that Deborah acted improperly by not

seeking Probate Court approval for her claim for reimbursement from the estate or for an alleged removal of funds from the estate, we first note that, although in his list of reasons of appeal filed in the Superior Court Elton did assert that Deborah failed to seek a Probate Court determination of her claim as required by § 33–11–8, the pretrial memorandum submitted by Elton's counsel addressed only the issue of the alleged oral agreement. Further, during closing argument before the Superior Court, Elton's counsel stated as follows:

> "The *sole question* before the [Superior Court] was, was there an agreement between Esther and Elton Randall whereby Mrs. Randall agreed to leave the house at 118 Fostmere Road [*sic*] in Warwick in return for Elton residing in the house from 2000 to the date of Mrs. Randall's death * * *." (Emphasis added.)

Because the issue of the removal of funds was not raised and articulated at trial before the Superior Court, it is not properly before us on appeal and is deemed waived. *See Thomas v. Ross,* 477 A.2d 950, 953 (R.I.1984) (holding that an attorney who explicitly stated to the trial justice that his clients were raising only one issue before the trial court would not be allowed thereafter to litigate other issues); *see also Resendes v. Brown,* 966 A.2d 1249, 1254 (R.I.2009) ("[T]his Court's 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial.").

■ Therefore, the only issue before us is whether the trial justice erred in dismissing Elton's appeal based on his findings of fact concerning the alleged oral agreement between Elton and his parents whereby his parents would leave Elton the Fostmere Court property upon their deaths in consideration of Elton living with and providing assistance to them.

■ We have stated that an oral agreement to devise property is enforceable and not prohibited by the statute of frauds "where completed performance of one party is demonstrated, if the performance is referable exclusively to the contract." *Thompson v. Thompson,* 495 A.2d 678, 680 (R.I.1985) (internal quotation marks omitted); *see also Lambert v. Lambert,* 82 R.I. 166, 170–71, 106 A.2d 729, 731 (1954); *Spencer v. Spencer,* 25 R.I. 239, 241, 55 A. 637, 637–38 (1903). Accordingly, such an oral agreement will be binding if it "is supported by consideration and is otherwise valid," and the agreement "may be enforced by any of the persons for whose benefit, after the death of the surviving party, the agreement was made." *Thompson,* 495 A.2d at 680–81 (internal quotation marks omitted). We have further stated that the existence of such an oral agreement to devise property must be established by clear and convincing evidence. *Lambert,* 82 R.I. at 170, 106 A.2d at 731; *Baumgartner v. Seidel,* 75 R.I. 243, 247, 65 A.2d 697, 698–99 (1949).

After a careful review of the record in the instant case, it is our view that the factual findings of the trial justice were not clearly erroneous, nor did the trial justice overlook or misconceive material evidence. *See B.S. International Ltd.,* 13 A.3d at 1062. In arriving at his findings of fact, the trial justice carefully assessed the competing testimony of those who testified, and he made specific determinations with respect to their relative credibility. We perceive no clear error in the trial justice's determination that Deborah, Vicki, and Preston were more credible than Elton, nor in the trial justice's resulting conclusion that, after weighing all of the evidence before him, Elton had failed to prove by

clear and convincing evidence the existence of an oral agreement with his parents (or his performance of same) whereby they would leave him the Fostmere Court property upon their deaths in return for services rendered by him. *See Thompson*, 495 A.2d at 679–80; *Lambert*, 82 R.I. at 170, 106 A.2d at 731. Accordingly, we affirm the judgment of the Superior Court.

## IV

### Conclusion

For the foregoing reasons, the plaintiff's appeal is denied. The papers in this case may be returned to the Superior Court.